UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BILL JONES, JENNIFER BRANCH, AND LAURA ROMERO**<br>On behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>VERSUS<br><br>**NEW ORLEANS REGIONAL PHYSICIAN HOSPITAL ORGANIZATION, INC., DBA PEOPLES HEALTH NETWORK,**<br>Defendants | **CIVIL ACTION:** |

# COMPLAINT

NOW COME, Plaintiffs, Bill Jones, Jennifer Branch and Laura Romero, who bring this collective action pursuant to the Fair Labor Standards Act and complain, on behalf of themselves and all others similarly situated, against Defendants, New Orleans Regional Physician Hospital Organization Peoples Health, Inc. and Peoples Health Network ("Defendants"), as follows:

## I. INTRODUCTION

1. Plaintiffs bring this action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and individually under the Louisiana Wage Statute, LA. REV. STAT. ANN. § 23:631 to recover unpaid wages, unpaid minimum wages, unpaid overtime wages and statutorily authorized liquidated and penalty damages as well as reasonable attorney's fees and costs associated with this litigation.

2. Defendants implemented and adhered to record-keeping and compensation policies and practices that intentionally misclassified employees as exempt from the FLSA's overtime wage provisions and required employees to work hours in excess of 40 hours in a workweek but prohibited employees from properly recording all hours worked so that Defendants could

1

avoid paying overtime compensation to its employees.

3. Defendants' record-keeping and compensation policies and practices created and continue to create willful failures and refusals to pay proper minimum wage and overtime compensation to Plaintiff and all other similarly situated nonexempt employees who are or were prohibited from accurately recording their work hours and not compensated properly for all their hours worked.

4. In violation of the Louisiana Wage statute, Defendants terminated Plaintiff Bill Jones,and failed to pay timely all compensation owed to Plaintiff at the time of his termination, including but not limited to unpaid minimum wages and unpaid overtime wages for off-the-clock hours Plaintiff suffered or was permitted to work.

## II. PARTIES

5. Plaintiff, Bill Jones is an adult citizen of the United States and resident of Louisiana.
6. Plaintiff, Jennifer Branch is an adult citizen of the United States and resident of Louisiana.
7. Plaintiff, Laura Romero is an adult citizen of the United States and resident of Louisiana.
8. Defendant, New Orleans Regional Physician Hospital Organization, Inc. is a Louisiana Corporation with its headquarters in Metairie, Louisiana.
9. Defendant, Peoples Health Network, is the trade name under which New Orleans Regional Physician Hospital Organization, Inc. operates. Plaintiffs hereinafter, refer to both Defendants collectively as "Peoples Health".
10. Peoples Health is a Medicare Advantage Organization with a Medicare contract to offer Health Maintenance Organization ("HMO") plans.
11. All the plaintiffs are current or former employees of Peoples Health.

## III.   JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is

brought under the Fair Labor Standards Act.

13. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the facts giving rise to the state law claims form part of the same case or controversy as the facts giving rise to the federal question claims.

14. This Court has personal jurisdiction over Defendant because it conducts business and employs individuals in the judicial district.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b); business records are kept and all or a substantial part of the events giving rise to the claims occurred within this judicial district, including but not limited to the unlawful employment and compensation practices described herein.

## IV.   STATEMENT OF FACTS

16. Plaintiffs have worked for Peoples Health for years.

17. Bill Jones began working for Peoples Health in March 2013 until his improper termination in 2017.

18. Jones worked as a Contracting Specialist. As a contracting specialist, Jones contacted physicians, clinics or physicians' networks to attempt to recruit doctors to participate in Peoples Health's HMO plans.

19. Jones only rarely was permitted to make personal, on-site visits to prospective plan participants.

20. Peoples Health improperly classified Jones as being exempt from the FLSA's overtime provisions.

21. Jones was regularly scheduled to work exactly 8 hours a day and 40 hours every work week, and he was required to take paid time off if he was not going to work his scheduled hours.

22. During his tenure with Defendant, Jones regularly and routinely arrived at work and began

working before his scheduled shift time, worked through his scheduled lunch break, and worked after his scheduled shift end time and on weekends. Due to Defendant's record-keeping and compensation policies, Jones was prohibited from reporting this time on his time sheet, and consequently, he was not compensated for this time.

23. Jennifer Branch has worked for Peoples Health since March 2006 in several positions including work within the Network Development department as a Provider Relations Coordinator, Project Coordinator, Project Manager and an Operations Specialist.

24. From March 2006 to June 2016, Branch worked in Peoples Health's Network Development team.

25. When she worked in the Network Development team, Branch was misclassified as exempt from the FLSA' overtime provisions.

26. Branch was regularly scheduled to work exactly 8 hours a day and 40 hours every work week, and she was required to take paid time off if she was not going to work her scheduled hours.

27. During her tenure with Defendant, Branch regularly and routinely arrived at work and began working before her scheduled shift time, worked through her scheduled lunch break, and worked after her scheduled shift end time and on weekends. Due to Defendant's record-keeping and compensation policies, Branch was prohibited from reporting this time on her time sheet, and consequently, she was not compensated for this time.

28. From June 2016 until present, Branch has worked as a Training Consultant.

29. As an Operations Specialist, Branch worked as a liaison between employees and management in coordinating certain aspects of Peoples Health's internal projects.

30. As an Operations Specialist, Branch was misclassified as exempt from the FLSA' overtime

provisions.

31. Laura Romero was regularly scheduled to work exactly 8 hours a day and 40 hours every work week, and she was required to take paid time off if she was not going to work her scheduled hours.

32. During her tenure with Defendant, Romero regularly and routinely arrived at work and began working before her scheduled shift time, worked through her scheduled lunch break, and worked after her scheduled shift end time and on weekends. Due to Defendant's record-keeping and compensation policies, Romero was prohibited from reporting this time on her time sheet, and consequently, she was not compensated for this time.

33. Laura Romero worked for Peoples Health in several positions, including administrative assistant and Pharmacy Part D Specialist.

34. From about 2012 until present, Romero has worked as a Pharmacy Part D Specialist.

35. As a Pharmacy Part D Specialist, she deals with pharmacy claims that were initially rejected for repayment by Medicare.

36. Romero was misclassified as exempt from the FLSA' overtime provisions.

37. Romero was regularly scheduled to work exactly 8 hours a day and 40 hours every work week, and she was required to take paid time off if she was not going to work her scheduled hours.

38. During her tenure with Defendant, Romero regularly and routinely arrived at work and began working before her scheduled shift time, worked through her scheduled lunch break, and worked after her scheduled shift end time and on weekends. Due to Defendant's record-keeping and compensation policies, Romero was prohibited from reporting this time on her time sheet, and consequently, she was not compensated for this time.

39. Even though Defendants used a timekeeping system that could accurately record their employee's work hours, Defendants instructed their misclassified employees not to record any overtime hours on their time sheets even if the employees worked hours in excess of 40 hours in a workweek.

40. Defendant's record-keeping and compensation policies and practices mandated that employees underreport their actual work hours.

41. No supervisor or manager for Defendants ever questioned or investigated why Plaintiffs worked hours outside of and in excess of their scheduled work time or whether they accurately reported all the hours she worked.

42. No supervisor or manager for Defendants ever ordered Plaintiffs to cease working hours outside of and in excess of their scheduled work hours; rather, Defendants knowingly allowed Plaintiffs to suffer or permitted them to work hours outside of and in excess of their scheduled work time.

43. No supervisor or manager for Defendants ever investigated or ensured that Plaintiffs were being compensated for all hours worked, including the hours worked outside and in excess of their scheduled work time.

44. Defendants developed and implemented a policy to misclassify as many employees as possible as salaried non-exempt employees regardless of their job duties to avoid incurring any overtime compensation obligations.

45. Upon information and belief, Defendants implemented and adhered to the same intentional misclassification, record-keeping and compensation policies in all of its departments throughout the company.

46. Upon knowledge and belief, the departments within Peoples Health which engaged in

intentional misclassification, record-keeping and compensation included, without limitation, the following: Administrative Services; Health Services; Revenue Management; Medical Management Operations; Administration; Network Development; Member Services; Revenue Management; Claims Operations; Pharmacy; Information Technology; Billing and Reconciliation Coordination; Finance; Human Resources; Planning and Development; Compliance; Marketing; and Communications.

47. Plaintiffs witnessed other misclassified employees arrive at work and begin working before their scheduled shift times, work through her scheduled lunch breaks, and work after their scheduled shift end times.

48. Plaintiffs know these employees were misclassified because the employees were placed on salary, and the job descriptions and duties do not qualify the employees to be exempt from the FLSA overtime provisions.

49. Upon information and belief, Defendants' record-keeping and compensation policies were dictated and issued by Defendant's senior management and issued to all of Defendants' departments.

50. Defendants' record-keeping policy promoted the falsification of employee time sheets by prohibited employees from reporting any hours worked in excess of 40 hours in a workweek.

51. Consequently, all misclassified employees are similarly situated to Plaintiffs and allowed to suffer or permitted to work hours for which they are not compensated properly.

### V. COUNT I- FLSA

52. Upon information and belief, Defendants have gross annual sales equal to or greater than $500,000.

53. Upon information and belief, Defendants engaged in interstate commerce including but not limited to allowing its employees to handle, sell, produce, or otherwise work on goods or

materials that came from a state other than Louisiana.

54. Upon information and belief, Defendant's employees use the mail, telephone or other equipment to communicate across state lines.

55. At all relevant times, Plaintiffs were misclassified as exempt employees of Defendant.

56. Defendants stated it compensated Plaintiffs via salary, but docked Plaintiffs for hours they did not work during their regularly scheduled work times.

57. As an employee of Defendant, Plaintiff's major, main, principal or most important duties did not require advanced knowledge in a field of science or learning or the consistent exercise of discretion or judgment.

58. Plaintiffs' primary duties were not managing the enterprise or managing a customarily recognized department or subdivision of the enterprise.

59. Plaintiffs did not customarily or regularly direct the work of at least two or more full-time employees.

60. Plaintiffs did not have the authority to hire and fire other employees or make any other change in employee status.

61. Plaintiffs' primary duties did not include the performance of non-manual work directly related to the management or general business operations of Defendants or its customers.

62. Plaintiffs did not exercise discretion or independent judgment as to matters of significance to Defendant's business operations or management.

63. Plaintiffs' primary duties did not include the performance of work requiring advanced knowledge.

64. Plaintiffs did not work as outside sales employees.

65. Plaintiffs were not compensated more than $100,000 annually.

66. Defendants failed to keep accurate payroll records showing the total hours worked each day and week by its employees.

67. Defendants refused to pay employees for any hours worked in excess of 40 hours in a workweek.

68. Plaintiffs regularly worked time that they were not permitted to record properly on their time sheet and for which they were not compensated properly or at all.

69. Plaintiffs regularly worked time in excess 40 hours in a workweek for which they were not compensated.

70. Defendants did not compensate Plaintiffs properly for all hours worked.

71. Defendants did not compensate Plaintiffs at an hourly wage equal to or greater than $7.25 per hour for each hour worked by Plaintiffs.

72. Defendants did not compensate Plaintiffs at a rate of one and one-half times Plaintiffs' regular rate of pay for all hours Plaintiff worked in excess of 40 hours in a workweek.

73. Defendants violated 29 U.S.C. §§ 206 & 207 by failing to compensate Plaintiffs properly.

74. Defendants knew that Plaintiffs worked hours for which Plaintiffs were not compensated properly.

75. Defendants failed to act in good faith when they promoted falsification of payroll records and refused to pay employees properly for time worked.

76. Defendants were, at all times, either represented by counsel or readily had expert legal counsel available to them.  Defendants either knew their conduct was illegal or showed reckless disregard as to whether their conduct violated the law.

77. Plaintiffs were damaged as direct and proximate results of Defendants' actions, policies and practices and failure to compensate them properly.

78. Defendants have many other misclassified employees who worked at the same location operated by Defendants and were subjected to the same improper record-keeping and compensation policies as Plaintiffs. These employees are similarly situated to Plaintiffs because they were misclassified as exempt and prohibited from recording their work hours properly and worked hours for which they were not compensated properly.

79. Pursuant to 29 U.S.C. § 216(b), Plaintiffs maintain this collective action on behalf of Plaintiffs and other similarly situated employees.

80. Defendants maintain records identifying the names, addresses and other contact information of putative collective class members who are similarly situated to Plaintiffs.

81. To the extent required by law, notice will be provided to putative collective class members who are similarly situated to Plaintiffs.

82. Plaintiffs and other similarly situated individuals are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime wages, liquidated damages, punitive damages to the fullest extent possible, reasonable attorney's fees and costs and judicial interest.

## VI. COUNT II VIOLATIONS OF LOUISIANA'S WAGE STATUTE

83. In 2017 Defendant terminated Bill Jones' employment.

84. Prior to his termination, Jones was required to and did work hours that he was prohibited from properly recording on his time sheet. Consequently, Jones regularly worked hours for which he was not compensated by Defendant.

85. Defendants knew or should have known of Jones' off-the-clock work, but Defendant refused to compensate him for his unpaid overtime work.

86. At the time of Jones' termination, Defendants owed unpaid wages to him, including but not limited to wages related to his unpaid overtime work.

87. To date, Defendants has failed to pay the unpaid wages owed to Jones.

88. LA. REV. STAT. ANN. § 23:631 states, "Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."

89. LA. REV. STAT. ANN. § 23:632 states, "Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."

90. Defendants' actions constitute violations of LA. REV. STAT. ANN. § 23:631, and as such Jones is entitled to an award of damages including the full amount of unpaid wages, penalty wages, reasonable attorney's fees and costs.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all proposed putative collective class members who are similarly situated to Plaintiff, pray that the Court:

  a. Certify this action as a collective action pursuant to 29 U.S.C. § 216(b);

  b. Recognize and designate Plaintiffs as a representative plaintiffs of the collective action;

  c. Order notice be sent to all putative collective class members who are similarly situated to Plaintiff that apprises the putative collective class members of the litigation and their

ability to assert timely FLSA claims in this action by filing a Consent to Join in this action;

d. Enter judgment declaring that Defendant's policies and practices complained of herein violate of the FLSA;

e. Enjoin Defendant, its officers and agents from engaging in the policies and practices complained of herein;

f. Enter judgment against Defendant and award to Plaintiff, and all others similarly situated, damages for unpaid wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, pre-judgment interest and post-judgment interest, all in amounts to be determined at trial;

g. Enter judgment requiring Defendant to pay to Plaintiff, and all others similarly situated, costs and expenses of bringing this action, including but not limited to reasonable attorney's fees, expert's fees and costs of sending notice to putative collective class members;

h. Enter judgment awarding damages to Plaintiff including the full amount of unpaid wages, penalty wages, reasonable attorney's fees and costs pursuant to LA. REV. STAT. ANN. § 23:632, all in amounts to be determined at trial;

i. Enter judgment awarding to Plaintiff, and all others similarly situated, any and all further legal relief, including without limitation, punitive damages, as this Court deems necessary, just and proper.

Respectfully submitted,

/s/Chad A. Danenhower
Chad A. Danenhower, Bar # 32845
Danenhower Law Firm, LLC
212 Park Place
Covington, LA 70433
Phone: 985-590-5026
Fax: 985-605-0525
chad.danenhower@danenhowerlaw.com


Dale E. Williams, Bar #18709
Law Office of Dale Edward Williams
212 Park Place
Covington, Louisiana 70433
Telephone: (985) 898-6368
Facsimile: (985) 892-2640
dale@daleslaw.com